# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KEVIN M. KILCULLEN, in his capacity as individual trustee of the George S. Mennen Irrevocable Trust FBO John H. Mennen UAD November 25, 1970,<br><br>    Plaintiff/Counterclaim Defendant,<br><br> v.<br><br>SPECTRO SCIENTIFIC, INC.,<br><br>    Defendant/Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2018-0429-KSJM |

## MEMORANDUM OPINION

Date Submitted: April 16, 2019
Date Decided: July 15, 2019

Kevin G. Abrams, J. Peter Shindel, Jr., Matthew L. Miller, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Herbert J. Stern, Brian J. DeBoer, STERN KILCULLEN & RUFOLO LLC, Florham Park, New Jersey; *Counsel for Plaintiff and Counterclaim Defendant Kevin M. Kilcullen, in his capacity as Trustee of the John H. Mennen Trust.*

Raymond J. DiCamillo, Kevin M. Gallagher, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; John J. Tumilty, Amanda R. Phillips, MORSE, BARNES-BROWN & PENDLETON, P.C., Waltham, Massachusetts; *Counsel for Defendant and Counterclaim Plaintiff Spectro Scientific, Inc.*

**McCORMICK, V.C.**

This is a dispute over a half a million dollars held in escrow in connection with a stock purchase agreement. Under the agreement, Spectro Scientific, Inc. ("Spectro") purchased all of the issued and outstanding shares of On-Site Analysis, Inc. ("On-Site"). The escrow served as security for the indemnification obligations the seller owed to Spectro. After the stock purchase closed, Spectro discovered that contrary to representations made in the stock purchase agreement, On-Site had sold and shipped to end users products containing unlicensed software. To resolve this licensing problem, Spectro entered into a settlement with the software's licensor. Through the settlement, the licensor agreed to release claims against Spectro and On-Site, but not against the end users of Spectro's products, leaving Spectro exposed to potential claims and cross claims by those end users.

In light of these settled and potential claims, Spectro sought indemnification from the seller against the escrow and instructed the escrow agent to hold all escrowed funds until Spectro's indemnification claims were resolved. The seller commenced this litigation to resolve Spectro's indemnification claims and secure a release of the escrowed funds. Spectro counterclaimed. The seller moved for judgment on the pleadings on its claims and to dismiss Spectro's mirror-image counterclaims.

This decision grants and denies the seller's motion in part. Spectro is time-barred from claiming indemnification for first-party claims against the seller for

1

alleged breaches of representations and warranties in the stock purchase agreement. Spectro is likewise time-barred from claiming fraud against the seller based upon the seller's allegedly false representations and warranties. Spectro's counterclaims seeking indemnification for potential, unasserted third-party claims by end users are dismissed without prejudice as unripe. Spectro's counterclaims seeking indemnification for third-party claims by the licensor, however, survive the pleadings stage.

## I.    FACTUAL BACKGROUND

The facts are drawn from Spectro's Verified Counterclaims (the "Counterclaims"), the documents incorporated by reference therein, and matters not subject to reasonable dispute, including allegations admitted in Spectro's answer ("Answer") to the Verified Complaint ("Complaint").[1]

On November 19, 2014, Spectro, On-Site, and plaintiff and counterclaim defendant George S. Mennen Irrevocable Trust established for the benefit of John H. Mennen under agreement dated November 25, 1970 ("Seller") entered into a stock purchase agreement ("Stock Purchase Agreement").[2] Under that Agreement, Spectro purchased all of the issued and outstanding shares of On-Site from Seller. The transaction closed on November 28, 2014. Contemporaneous with the closing,

---

[1] C.A. No. 2018-0429-KSJM Docket ("Dkt.") 4, Answer and Countercls.; Dkt. 1, Compl.

[2] Countercls. Ex. 1 (cited as "Stock Purchase Agr.").

2

Spectro and Seller executed an escrow agreement ("Escrow Agreement")[3] placing $500,000 of the purchase price in escrow. The escrowed funds served as security for indemnification obligations owed by Seller to Spectro under the Stock Purchase Agreement.[4]

On-Site designs and manufactures oil analyzers, which it sells and ships to customers. Before the stock purchase closed, On-Site shipped approximately 640 analyzers containing unlicensed software owned by Microsoft Corporation ("Microsoft"). Neither On-Site nor Seller disclosed these facts to Spectro prior to the closing. To the contrary, On-Site and Seller represented and warranted in the Stock Purchase Agreement that On-Site was authorized to use the software, had obtained all necessary licenses, and was in compliance with all laws.[5] Spectro discovered the issue and investigated its scope after the stock purchase closed. Spectro determined that of the 640 shipped analyzers containing unlicensed software, approximately 330 (the "legacy units") remained in worldwide use after the closing.

Under Section 7.2 of the Stock Purchase Agreement, Seller agreed to indemnify Spectro for certain "Losses." The Escrow Agreement set forth

---

[3] Countercls. Ex. 2 (cited as "Escrow Agr.").

[4] *See* Stock Purchase Agr. § 1.5.

[5] *Id.* §§ 3.13(c), 3.13(f), 3.15.

requirements for seeking indemnification against the escrowed funds and disputing such indemnification claims.[6] The Escrow Agreement further provided that the balance of any escrowed funds not subject to an indemnification claim—whether pending or disputed—would be released within three business days of November 28, 2015.[7]

On November 16, 2015, Spectro sent a letter to Seller and the escrow agent claiming indemnification under Section 7.2 of the Stock Purchase Agreement. The claim notice cited On-Site's "failure to procure and maintain appropriate software licenses" for its analyzers as the basis for Spectro's claim.[8] On November 18, 2015, the Seller responded with a letter disputing Spectro's indemnification claims.

On May 25, 2016, Spectro entered into a settlement with Microsoft. In exchange for a payment of $66,000, Microsoft released both Spectro and On-Site from claims relating to the unlicensed software used in the legacy units. Microsoft, however, did not release the end users of the 330 legacy units. According to Spectro, this leaves Spectro and On-Site exposed to licensing related claims by the end users

---

[6] *See, e.g.*, Escrow Agr. § 5(a) (requiring Spectro to provide written notice its indemnification claims prior the one-year anniversary of the closing, November 28, 2015); *id.* (requiring Seller, if it disputes Spectro's indemnification claim, to provide written notice of its dispute within 20 days of Spectro's claim notice).

[7] *Id.* § 5(c).

[8] Countercls. Ex. 3.

of the legacy units, particularly those end users who Microsoft may contact or sue. Spectro made the $66,000 payment to Microsoft on July 7, 2016.

On July 28, 2016, Spectro notified Seller of Spectro's settlement with Microsoft. Spectro demanded that Seller immediately authorize the escrow agent to pay from the escrowed funds the amount of the settlement consideration, plus attorneys' fees and costs, totaling $134,370.55. Spectro also reserved its right to seek indemnification against the balance of the escrowed funds for future Losses. The Seller responded on August 2, 2016, stating that Spectro had provided no supporting documentation to date and requesting that Spectro provide certain supporting documentation. Seller also stated that Spectro's failure to obtain Seller's approval of the Microsoft settlement violated the Stock Purchase Agreement.

Communications between Spectro and Seller ceased for nearly two years. Then, on May 10, 2018, Spectro informed the escrow agent and Seller that Spectro's indemnification claims remained pending and that the escrowed funds may not be distributed.

Seller commenced this litigation on June 12, 2018. Spectro answered and counterclaimed on July 23, 2018. Seller moved for judgment on the pleadings as to the Complaint and to dismiss Spectro's Counterclaims on August 13, 2018. The

parties fully briefed that motion[9] and then presented oral arguments on April 16, 2019.[10]

## II. LEGAL ANALYSIS

Seller's Complaint pleads four counts against Spectro to enforce the Stock Purchase Agreement and Escrow Agreement. Spectro's Counterclaims plead five counts that essential mirroring Seller's counts, as well as a sixth count for fraud. At the heart of the parties' respective contract-based counts is a single question: Is Spectro is entitled to indemnification and if so, to what extent? Beyond this question, Spectro further seeks a determination as to whether Seller committed fraud in connection with its entry into the Stock Purchase Agreement.

Seller has moved to dismiss the Counterclaims under Court of Chancery Rule 12(b)(6). The Court may grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim if a complaint does not allege sufficient facts that, if proven, would entitle the plaintiff to relief.[11] "[T]he governing pleading standard in Delaware to

---

[9] Dkt. 8, Pl.'s Opening Br. in Supp. of Pl.'s Mot. for J. on the Pleadings and to Dismiss Def.'s Countercls. ("Pl.'s Opening Br."); Dkt. 11, Def. Spectro Scientific, Inc.'s Opp'n to Pl.'s Mot. for J. on the Pleadings and to Dismiss Def.'s Countercls. ("Def.'s Ans. Br."); Dkt. 13, Pl.'s Reply Br. in Further Supp. of Pl.'s Mot. for J. on the Pleadings and to Dismiss Def.'s Countercls. ("Pl.'s Reply Br.").

[10] Dkt. 22, Oral Argument on Pl.'s Mot. for J. on the Pleadings and to Dismiss Def.'s Countercls. ("Oral Arg. Tr.").

[11] Ct. Ch. R. 12(b)(6).

survive a motion to dismiss is reasonable 'conceivability.'"[12]   When considering

such a motion, the Court must "accept all well-pleaded factual allegations in the

Complaint as true, accept even vague allegations in the Complaint as 'well-pleaded'

if they provide the defendant notice of the claim, [and] draw[] all reasonable

inferences in favor of the plaintiff[.]"[13]   The Court is not required to "accept as true

conclusory allegations 'without specific supporting factual allegations'" or "'accept

every strained interpretation of the allegations proposed by the plaintiff.'"[14]   And the

Court may consider the timeliness of claims on a motion to dismiss "if the facts pled

in the complaint, and the documents incorporated within the complaint, demonstrate

that the claims are untimely."[15]

Seller has also moved for judgment on the pleadings on each of its claims.  In

deciding a motion for judgment on the pleadings under Court of Chancery Rule

12(c), the Court "view[s] the facts pleaded and the inferences to be drawn from such

facts in a light most favorable to the non-moving party."[16]   "A motion for judgment

---

[12] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[13] *Id.* at 536.

[14] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citations omitted).

[15] *CertainTeed Corp. v. Celotex Corp.*, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005).

[16] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (citation omitted).

on the pleadings may be granted only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[17]

This decision first focuses exclusively on Seller's Rule 12(b)(6) motion and then turns to Seller's Rule 12(c) motion.

## A. Seller's Motion to Dismiss the Counterclaims

Seller seeks dismissal of five of Spectro's six Counterclaims—specifically, those counts for declaratory judgment, breach of contract (two counts), specific performance, and fraud.[18] This decision refers to the declaratory judgment, breach of contract, and specific performance claims as the "Indemnification Counterclaims."

### 1. Spectro's Indemnification Counterclaims

The Indemnification Counterclaims implicate two provisions of the Stock Purchase Agreement. The first, the "representations" provision, entitles Spectro to claim indemnification for Losses "asserted, incurred in connection with, arising out

---

[17] *Id.* (citation omitted).

[18] Countercls. ¶¶ 72–77 (Count I), 78–81 (Count II), 82–89 (Count III), 90–95 (Count IV), 96–104 (Count V). Despite moving for dismissal of Spectro's Counterclaims in full, Seller represented in its papers and at oral argument that it does not seek resolution of Spectro's sixth count for contractual fee shifting at this time. Pl.'s Opening Br. at 38 ("[R]esolution of the [contractual] fee award issue will depend on the Court's ruling on the Motion and should be addressed in separate proceedings after the Court rules on the Motion."); Oral Arg. Tr. at 47 (Seller's counsel: "Count VI for fee shifting, is for fee shifting under the escrow agreement which, that's fair game. We have the same claim."). This Court thus does not address any basis for fee shifting at this stage.

of, resulting from or incident to . . . any breach of any representation or warranty made by [On-Site] or the Seller in or pursuant to this [Stock Purchase] Agreement or in any certificate or other closing document delivered pursuant to this Agreement[.]"[19] Counterclaims I–IV seek indemnification based upon Seller's alleged breaches of representations and warranties and are thus are based in whole or in part on this first provision. The second, the "product shipment" provision, entitles Spectro to claim indemnification for Losses "asserted, incurred in connection with, arising out of, resulting from or incident to . . . any product shipped or manufactured by, or any services provided by, [On-Site], in whole or in part, prior to the Closing Date."[20] Counterclaims I, III, and IV each seek indemnification in connection with Spectro's settlement with Microsoft and residual exposure to liability from the legacy unit end users and are thus based in part on this second provision.[21]

---

[19] Stock Purchase Agr. § 7.2(a)(i)(A).

[20] *Id.* § 7.2(a)(i)(E).

[21] In addition to seeking dismissal of the Indemnification Counterclaims, Seller seeks dismissal of Spectro's request for attorney's fees and costs in connection with this action under the indemnification provisions at issue. In the event Spectro prevails on any of its claims in this action, the Court will determine whether fee shifting, contractual or otherwise, is warranted. Seller can raise any contractual or other arguments at that time.

### a. Indemnification Based on the Representations Provision

Under Delaware law, post-merger claims for breaches of contractual representations and warranties and claims for contractual indemnification for those breaches accrue on the day of closing.[22] The stock purchase closed, and claims for breach of representations and warranties and corresponding claims for contractual indemnification under the Stock Purchase Agreement therefore accrued, on November 28, 2014.

The default statute of limitations for contractual claims is three years.[23] While "statutes of limitation do not generally apply directly in equity, equity follows the law and will apply a statute of limitations by analogy under appropriate circumstances."[24] Given the mixed legal and equitable nature of the Indemnification

---

[22] *See GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *6 (Del. Ch. July 11, 2011) ("Because representations and warranties about facts pre-existing, or contemporaneous with, a contract's closing are to be true and accurate when made, a breach occurs on the date of the contract's closing and hence the cause of action accrues on that date."); *CertainTeed*, 2005 WL 217032, at *3–5 (concluding that contractual indemnification claim for breach of representations under an asset purchase agreement accrued at the date of breach); *see also Levy v. Hayes Lemmerz Int'l, Inc.*, 2006 WL 985361, at *11 (Del. Ch. Apr. 5, 2006) (noting that the *CertainTeed* court "ruled in favor of the seller, holding that the [contractual] indemnification claim accrued on the date of closing").

[23] 10 *Del. C.* § 8106(a) (setting three-year statute of limitations for actions "based on a promise"); *see also CertainTeed*, 2005 WL 217032, at *5 (applying 10 *Del. C.* § 8106(a) to indemnification claims brought under an asset purchase agreement).

[24] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *3 (Del. Ch. July 17, 1988), *aff'd*, 725 A.2d (Del. 1999).

Counterclaims, this Court applies the relevant statute of limitations by analogy.[25]

Thus, absent tolling, the statute of limitations barred the Indemnification Counterclaims based on the representations provision as of November 28, 2017— three years from the closing.

In addition to the three-year statute of limitations, the Stock Purchase Agreement imposed a truncated one-year contractual limitations period on representations and warranties related to intellectual property. Section 7.1(a) of the Stock Purchase Agreement provides that "all representations and warranties in this Agreement [other than certain representations and warranties not relevant here] . . . shall terminate on the date that is twelve (12) months following the Closing Date"— *i.e.*, November 28, 2015.[26]

---

[25] *See Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 983 (Del. Ch. 2016) (In this Court, the statute of limitations applies strictly where a plaintiff brings a legal claim seeking legal relief and by analogy where a plaintiff brings a legal claim seeking equitable relief or an equitable claim seeking legal relief. And where a plaintiff brings "an equitable claim seeking equitable relief, . . . the doctrine of laches applies and any applicable statute of limitations would apply only by analogy[.]" Even then, "the Court tends to afford great weight to the analogous statutory period, if one exists[.]").

[26] Stock Purchase Agr. § 7.1(a); *see GRT*, 2011 WL 2682898, at *3 (finding survival clause in contract established one-year contractual limitations period for filing breach of contract claim and noting: "Delaware law does not have any bias against contractual clauses that shorten statutes of limitations because they do not violate the legislatively established statute of limitations, there are sound business reasons for such clauses, and our case law has long upheld such clauses as a proper exercise of the freedom of contract."); *HBMA Hldgs., LLC v. LSF9 Stardust Hldgs. LLC*, 2017 WL 6209594, at *6 (Del. Ch. Dec. 8, 2017) ("Under Delaware law, parties to a contract may shorten the default statute of limitations by agreement as long as the agreed upon time period is reasonable.").

11

Spectro argues that its November 16, 2015 indemnification claim notice tolled both statutory and contractual limitations periods. In support of its tolling argument, Spectro relies on Section 7.1(d) of the Stock Purchase Agreement:

> [A]ny representation or warranty in respect of which indemnity may be sought under Section 7.2 below, and the indemnity with respect thereto, *shall survive the time at which it would otherwise terminate pursuant to this Section 7.1* if notice . . . shall have been given to the party against whom such indemnity may be sought prior to such time.[27]

According to Spectro, Section 7.1(d) served to toll both limitations periods until resolution of its indemnification claims based upon the representations provision.[28]

Spectro's reliance on Section 7.1(d) is misguided. Although parties may contractually agree to permit an indemnification notice to toll limitations periods until the underlying claim is resolved,[29] Section 7.1 does not reflect such an agreement. Section 7.1 does not expressly provide for tolling the statutory limitations period until the indemnification claim is resolved.[30] Rather, it provides that any representation or warranty "shall survive the time at which *it would*

---

[27] Stock Purchase Agr. § 7.1(d) (emphasis added).

[28] Def.'s Ans. Br. at 15–16.

[29] *HBMA Hldgs.*, 2017 WL 6209594, at *6; *Aircraft Serv. Int'l, Inc. v. TBI Overseas Hldgs., Inc.*, 2014 WL 4101660, at *4 (Del. Super. Aug. 5, 2014).

[30] In this way, Section 7.1 is distinguishable from the provisions at issue in the cases upon which Spectro relies. *See* Def.'s Ans. Br. at 14–15 (first citing *HBMA Hldgs.*, 2017 WL 6209594, at *6; then citing *Aircraft Serv.*, 2014 WL 4101660, at *4).

*otherwise terminate pursuant to this Section 7.1*[.]"[31]   As to the survival of the

intellectual property-related representations and warranties, Section 7.1 sets forth

the applicable one-year contractual limitations period.  Thus, Section 7.1(d) allows

tolling of the contractual limitations period only.  Put differently, Section 7.1(d)

provides for the survival of the underlying claim until the expiration of the applicable

statutory limitations period.[32]   It does not toll the statutory limitations period

applicable to indemnification claims based on the representations provision.

Because Spectro's claim notice did not toll the statute of limitations, Spectro's

Indemnification Counterclaims based on the representations provision are dismissed

as time-barred.

### b.   Indemnification Based on the Product-Shipment Provision

The Indemnification Counterclaims based on the product-shipment provision

are not time-barred.   Spectro's claims for indemnification under the product-

---

[31] Stock Purchase Agr. § 7.1(d) (emphasis added).

[32] *See generally GRT*, 2011 WL 2682898, at *15 ("[T]he presence (or absence) of a survival clause that expressly states that the covered representations and warranties will survive beyond the closing of the contract, although it may act to *shorten* the otherwise applicable statute of limitations, never acts to lengthen the statute of limitations, at least in jurisdictions, like Delaware, whose statutes have been read to forbid such extensions."); 1 Mergers and Acquisitions Comm., ABA Bus. Law Section, *Model Stock Purchase Agreement with Commentary* § 11.1 (2d ed. 2010) (noting that "what is meant by saying the representations 'survive' is that a remedy is preserved after closing[,]" but not that a survival provision operates to toll statutory limitations); *id.* § 11.5 ("Enforcement of a contract is, of course, subject to commencing an action within the relevant statute of limitations or repose[.]").

shipment provision arise from third-party claims. Indemnification claims based on third-party claims do not accrue until the underlying third-party claim is "finally decided."[33] In this case, the third-party claims by Microsoft were finally decided when Spectro settled those claims on May 25, 2016,[34] and the three-year statute of limitations therefore ran until May 25, 2019—nearly a year after Spectro brought its Indemnification Counterclaims. The potential, unasserted third-party claims by the legacy units' end users are of course not finally decided, and the statute of limitations therefore has not yet begun to run on this aspect of Spectro's Indemnification Counterclaims.

Although the Indemnification Counterclaims based on the product-shipment provision are not time-barred, Seller argues that they fail for different reasons.[35]

---

[33] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009); *see also Scharf v. Edgcomb Corp.*, 864 A.2d 909, 919 (Del. 2004) ("A cause of action for indemnification accrues when the officer or director entitled to indemnification can 'be confident any claim against him . . . has been resolved with certainty.'" (citation omitted)); *CertainTeed*, 2005 WL 217032, at *14 (observing that under common law, indemnification claims for third-party claims accrue "when the indemnifiable losses to the third parties [are] incurred and the dispute with them concluded").

[34] *See CertainTeed*, 2005 WL 217032, at *14 ("CertainTeed's Product Liability Claims accrued, and the statute of limitations began to run, when the indemnifiable losses to the third parties were incurred and the dispute with them concluded, which was when CertainTeed settled its third-party claims.").

[35] Seller also contends that Spectro cannot bring its Indemnification Counterclaims pursuant to both the representations provision and the product-shipment provision because the claims stem from the same facts—On-Site's pre-closing shipment of unlicensed software through the legacy units. According to Seller, the product-shipment provision "was intended to cover 'Losses' related to the products and services the Company provided pre-Closing that are distinct from 'Losses' caused by a breach of the representations and

As to the indemnification claim arising from the Microsoft settlement, Seller contends the Stock Purchase Agreement imposed a condition on Spectro claiming indemnification for third-party settlements, which Spectro failed to meet. Section 7.2(c) of the Agreement prohibits Spectro from compromising or settling any third-party claim subject to indemnification without first obtaining Seller's written consent.[36] Seller contends that it is "indisputable" that Spectro failed to obtain Seller's consent.[37]

The problem with Seller's argument is that Spectro actually disputes the facts.[38] At this stage, the Court is bound to accept Spectro's position as true.

---

warranties in the [Stock Purchase Agreement]." Pl.'s Opening Br. at 31. However, the Stock Purchase Agreement's representation provision and product-shipment provision are not mutually exclusive. Indeed, Section 8.14 of the Stock Purchase Agreement expressly provides that "[a]ll rights and remedies of the parties hereto are cumulative" and that "the exercise of one or more rights or remedies will not prejudice or impair the concurrent or subsequent exercise of other rights or remedies."

[36] Stock Purchase Agr. § 7.2(c) ("If the indemnifying party fails to assume the defense of such claim within thirty (30) days after receipt of the Claim Notice, the indemnified party . . . [will] have the right to undertake, at the indemnifying party's cost and expense, the defense, compromise or settlement of such claim . . . ; provided, however, that such Claim will not be compromised or settled without the written consent of the indemnifying party, which consent will not be unreasonably withheld."). Section 7.2(c) further requires Spectro to keep Seller "reasonably informed" of the progress of any settlement. *Id.*

[37] Pl.'s Opening Br. at 34.

[38] Relevant to Seller's arguments regarding the Microsoft settlement, Seller alleges that "Spectro went radio silent" after Spectro's November 16, 2015 claim notice and until Spectro's July 28, 2016 letter referencing the Microsoft settlement and that "Spectro breached the [Stock Purchase Agreement] by not obtaining the [Seller's] consent before settling the licensing claims with Microsoft." Compl. ¶¶ 27, 45. However, Spectro "Denied" these allegations in its Answer. Answer ¶¶ 27, 45.

Because the factual predicate for Seller's argument as to the Microsoft settlement indemnification claim cannot be resolved at the pleadings stage, Seller's motion to dismiss this portion of Spectro's Indemnification Counterclaims is denied.

As to the indemnification demand based upon yet-to-materialize claims by end users of the legacy units, Seller argues that it must be dismissed because it is not yet ripe.[39] Spectro does not meaningfully respond to these arguments. Instead, Spectro counters in a footnote in briefing that all it must show to warrant indemnification is that it "may face future additional Losses."[40] The relevant contractual language does not support Spectro's argument. The Stock Purchase Agreement defines "Losses" to include "demand[s]" and "claim[s]."[41] Spectro's Counterclaims are devoid of any allegations of asserted demands or claims by users of legacy units. Thus, while Section 7.2(a) requires Seller to indemnify Spectro from "asserted" Losses, Spectro has not alleged any such Losses in connection with the legacy units. Spectro merely alleges that it is possible that such users may one day assert claims against Spectro and On-Site.[42] Indeed, the potential claims Spectro raises may never be asserted and Spectro may never suffer harm. Spectro's alleged "exposure" is insufficient to render its indemnification claim ripe under the

---

[39] Pl.'s Opening Br. at 33–34; Pl.'s Reply Br. at 13–14.

[40] Def.'s Ans. Br. at 14 n.4.

[41] Stock Purchase Agr. Ex. A at A-5.

[42] *See* Countercls. ¶ 21.

governing language.[43]   The portion of Spectro's Indemnification Counterclaims based upon potential, unasserted claims by legacy units end users is dismissed without prejudice.

### 2.     Spectro's Counterclaim for Fraud

Under Delaware law, the default statute of limitations for fraud is three years.[44]  A fraud claim accrues, and the statute of limitations begins to run, "at the moment of the wrongful act and not when the effects of the act are felt."[45]  Where a fraud claim alleges false representations and warranties in a purchase agreement, the fraud claim accrues at closing.[46]

---

[43] "A ripeness determination requires a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court 'in postponing review until the question arises in some more concrete and final form.'" *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217–18 (Del. 2014) ("[A] dispute will be deemed not ripe where the claim based on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention." (internal quotation marks and citations omitted)); *Bechuk v. CA, Inc.*, 902 A.2d 737, 741 (Del. Ch. 2006) (action was unripe where "the key event" central to the dispute "may never occur").

[44] 10 *Del. C.* § 8106; *see also Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *6 (Del. Ch. Jan. 27, 2010) ("A three year statute of limitations applies in Delaware to claims 'arising from a promise,' including claims for . . . fraud." (citing 10 *Del. C.* § 8106)), *aff'd*, 7 A.3d 485 (Del. 2010).

[45] *Sunrise Ventures*, 2010 WL 363845, at *6 (citation omitted).

[46] *CertainTeed*, 2005 WL 217032, at *8 ("CertainTeed has also pled that Celotex committed fraudulent misrepresentation by providing false representations and warranties . . . . [U]nder 10 *Del. C.* § 8106, CertainTeed's misrepresentations are also subject to a three-year statute of limitations, and whether treated as a breach of contract or as tort, the accrual date as to all of these claims was the date of Closing.").

In this case, Spectro's fraud claim seeking damages is a legal claim seeking legal relief, and this Court should therefore apply the statute of limitations strictly.[47] Spectro's fraud claim occurred at closing on November 28, 2014, and the statute of limitations on Spectro's fraud claim therefore ran only until November 28, 2017. Because Spectro filed the fraud claim on July 23, 2018, after the statutory limitations period ended, the fraud claim is time-barred and dismissed.

## B. Seller's Motion for Judgment on the Pleadings

Seller seeks judgment on the pleadings as to three of its four claims—namely, Counts I to III for declaratory judgment, breach of contract, and specific performance.[48] Based on the Court's rulings on Seller's motion to dismiss, Seller's motion for judgment on the pleadings is granted in part and denied in part.

### 1. Seller's Declaratory Judgment Claim

The crux of Seller's declaratory judgment claim contends that Spectro is not entitled to indemnification and that the statute of limitations for Spectro's fraud claim has expired.[49] As discussed above, Spectro's claim for indemnification for the

---

[47] *WisdomTree Invs.*, 145 A.3d at 983 ("If a plaintiff brings a legal claim seeking legal relief in the Court of Chancery, the statute of limitations (and its tolling doctrines) logically should apply strictly and laches should not apply.").

[48] Compl. ¶¶ 35–51. In briefing and at oral argument, Seller represented that as with Spectro's sixth count, Seller does not seek resolution of Seller's fourth count for contractual fee shifting at this time. *See supra* n.18.

[49] Compl. ¶ 43. The other issues for which Seller seeks declaratory judgment are duplicative of and therefore addressed in conjunction with Seller's breach of contract and specific performance claims.

Microsoft settlement survives dismissal, while Spectro's indemnification and fraud claims based upon the representations provision are time-barred, and its indemnification claim based on potential third-party claims by users of the legacy units is unripe. Accordingly, the Court hereby enters a declaratory judgment as to these limitations period and ripeness rulings. Seller's motion for judgment on the pleadings for its declaratory judgment claim is otherwise denied.

## 2. Seller's Breach of Contract Claim

Seller's breach of contract claim asserts that Spectro breached the Stock Purchase Agreement by not obtaining Seller's consent before entering into the Microsoft settlement and breached the Escrow Agreement by failing to bring an action to resolve Spectro's indemnification claim in Delaware.[50]

The first aspect of Seller's contract claim concerning whether Spectro obtained Seller's consent before entering into the Microsoft settlement raises a disputed fact.[51] The factual dispute precludes a finding of breach of contract on that basis at this time.

The second aspect of Seller's claim relies on Section 5(b) of the Escrow Agreement, which provides that if a disputed indemnification claim "has not been resolved or compromised within thirty (30) days after the Seller sends notice of

---

[50] Compl. ¶¶ 45–46.

[51] *Supra* n.38.

dispute of the same . . . , said claim shall be brought in the courts of the State of Delaware, County of Wilmington, or, if it has or can acquire jurisdiction, in the United States District Court for the District of Delaware[.]"[52]  Spectro disputes that it has "failed" to bring its indemnification claim in a Delaware court.[53]  Furthermore, Section 5(b) does not set a specific deadline by which a disputed indemnification claim was to be brought in a Delaware court; indeed, neither party contends that such a deadline existed.  Thus, on the record currently before this Court, Seller's claim for breach of Section 5(b) of the Escrow Agreement cannot be resolved.

Seller's motion for judgment on the pleadings as to its breach of contract claim is denied.

### 3.    Seller's Specific Performance Claim

Seller's specific performance claim seeks an order compelling Spectro to comply with Section 5(b) of Escrow Agreement by instructing the escrow agent, together with Seller, to release the escrowed funds.[54]  Because the Court rules that one portion of Spectro's indemnification claims, which seek payment from the escrow fund, shall proceed to the merits phase of litigation, the Court declines to

---

[52] *See* Pl.'s Opening Br. at 32.  The Escrow Agreement is governed by Pennsylvania law. Escrow Agr. § 19.  Under Pennsylvania law, "[it] is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."  *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982).

[53] Answer ¶ 41.

[54] Compl. ¶¶ 50–51.

order the release of the escrowed funds at this time. Seller's motion for judgment on the pleadings as to its specific performance claim is denied.

## III. CONCLUSION

As set forth above, Seller's motion to dismiss and for judgment on the pleadings is granted in part and denied in part. Spectro's Indemnification Counterclaims based upon the representation provision are dismissed as time-barred. Spectro's Indemnification Counterclaims based upon potential claims by end users of the legacy units are dismissed without prejudice as unripe. Spectro's fraud claim is dismissed as time-barred. And Seller is granted a declaratory judgment as to this Court's limitations period and ripeness rulings. Seller's motion is otherwise denied.